IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | | |
|---|---|---|
| **LAWRENCE BRADFORD VAUGHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 3:14-19108** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on the Parties' cross-Motions for Judgment on the Pleadings (Document Nos. 15 and 16.), Plaintiff's Response (Document No. 17.), and Plaintiff's Supplemental Brief. (Document No. 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 7.)

The Plaintiff, Lawrence Bradford Vaughan (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on November 25, 2010 (protective filing date), alleging disability as of November 7, 2010, due to right leg above the knee amputation and a learning disability.[1] (Tr. at 35, 136-37, 136-37, 138-43, 149, 166.) The claims were denied initially and upon reconsideration. (Tr. at 35, 28-31, 56-58, 61-63, 70-72, 73-75.) On August 11, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76-77.) The hearing was held on August 30,

---

[1] On his form Disability Report - Appeal, dated August 11, 2011, Claimant reported that also was experiencing pain in the left knee." (Tr. at 216.)

2012, before the Honorable Jerry Meade. (Tr. at 39-86.) By decision dated December 27, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 35-50.) The ALJ's decision became the final decision of the Commissioner on May 12, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) On June 23, 2014, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

>     (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>     (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since November 7, 2010, the alleged onset date. (Tr. at 37, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "a right lower extremity amputation above the knee due to a gunshot wound; C5-C6 herniated nucleus pulpous, status post discectomy; left knee medial meniscus tear, status post arthroscopic surgery; chronic obstructive pulmonary disorder; major depressive disorder; borderline intellectual functioning; and polysubstance abuse," which were severe impairments. (Tr. at 37, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 39, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform light exertional level work, as follows:

> [T]he [C]laimant can never operate foot controls with the right lower extremity. The [C]laimant can frequently operate foot controls with the left lower extremity. He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to excessive vibrations and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He must avoid all exposure to hazards such as moving machinery

and unprotected heights. The [C]laimant can understand, remember and carry out simple instructions. He can have no interaction with the public and occasional interaction with coworkers and supervisors. The [C]laimant cannot do production rate or pace work. He can only work in a low-stress job (defined as a job that requires only occasional decision making and has only occasional changes in the work setting).

(Tr. at 42, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 48, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a hand packager and product inspector at the unskilled, light level of exertion and as a surveillance systems monitor and an assembler at the unskilled, sedentary level of exertion. (Tr. at 48-49, Finding No. 10.) On this basis, benefits were denied. (Tr. at 49, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by

substantial evidence.

Claimant's Background

Claimant was born on July 14, 1969, and was 43 years old at the time of the administrative hearing, December 13, 2012. (Tr. at 48, 136, 138.) Claimant had a limited education and was able to communicate in English. (Tr. at 48, 165, 167.). Claimant had past relevant work as a river deck engineer, a truck driver, and a deck hand. (Tr. at 48, 167, 172-79.)

Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find that his right leg above the knee amputation with stump complications met Listing 1.05B. (Document No. 15 at 5.) Claimant asserts that his treating physician, Dr. James P. Wagner, D.O., noted on numerous occasions that he suffered from phantom right leg pain, experienced chronic pain with a poor prognosis, and was unable to work. (Id.) Accordingly, Claimant contends that contrary to the ALJ's decision, Dr. Wagner's treatment notes demonstrated that Claimant's impairment met the stump complications of Listing 1.05B. (Id.)

In response, the Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant did not meet Listing 1.05B. (Document No. 16 at 6-7.) The Commissioner notes that Courts have construed the "stump complications" language of Listing 1.05B to mean "more than a poorly fitting prosthesis, and consists of a problem with a person's body that prevents the effective use of prosthesis for at least 12 months." (Id. at 6.) To this end, the Commissioner asserts that the evidence demonstrated that Claimant was able to ambulate without discomfort, had no significant

7

areas of pressure, maintained alignment, was able to sit and stand without problem, and had a comfortable and supportive socket fit. (Id. at 7.) Although Claimant reported increased pain due to the prosthetic leg and that his stump once was painful to touch, the examination findings did not support such complaints. (Id.) Accordingly, the Commissioner contends that the evidence fails to establish that Claimant met Listing 1.05B. (Id.)

In reply, Claimant again asserts that Dr. Wagner's treatment records establish the requisite stump complications to meet Listing 1.05B. (Document No. 17 at 1.) In addition, Claimant asserts that his testimony reflected that the prosthesis caused high levels of pain. (Id.) Subsequent to the ALJ's decision, Claimant's counsel referred him to Dr. Bruce A. Guberman, M.D., for the purpose of evaluating whether he was able to wear a prosthetic leg. (Id. at 2.) Physical exam by Dr. Gruberman on February 4, 2013, revealed that Claimant's stump markedly was sensitive and Claimant barely could tolerate momentary pressure to the area and that Claimant experienced severe pain upon putting on the prosthetic without weight bearing. (Id. at 2; Exhibit A.) Dr. Gruberman opined that Claimant was incapable of wearing his prosthetic due to neuropathic pain and/or neuroma at the distal media aspect of the stump. (Id.) He further opined that Claimant was permanently and totally disabled from all types of employment. (Id.) Claimant notes that he submitted Dr. Gruberman's opinions to the Appeals Council, who concluded that the evidence did not relate to the relevant time period, which ended on December 27, 2012. (Id.) Claimant contends however, that Dr. Gruberman's examination and opinions were undertaken only a little more than a month after the ALJ's decision in order to rebut the ALJ's "inexplicable reading of the evidence." (Id. at 3.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when he rejected Dr. Wagner's opinion that Claimant was disabled

8

and relied on the findings of the State agency medical consultants. (Document No. 15 at 6-8.) He asserts that the ALJ failed to consider adequately the applicable Regulations and case law when evaluating the opinion of his treating physician. (Id. at 7-8.)

In response, the Commissioner asserts that the ALJ's decision to give Dr. Wagner's opinion little weight is supported by the substantial evidence of record. (Document No. 16 at 7-8.) The Commissioner asserts that the ALJ properly gave Dr. Wagner's opinion that Claimant was unable to work little weight because it was an opinion on an issue reserved to the Commissioner. (Id. at 7.) Furthermore, the Commissioner asserts that the ALJ utilized the factors set forth in the Regulations and properly determined that Dr. Wagner's opinion was vague, in that it provided no specific functional limitations, and was inconsistent with the record as a whole. (Id. at 8.) Accordingly, the Commissioner contends that the ALJ provided good reasons for the little weight given to Dr. Wagner's opinion. (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the Appeals Council erred in failing to consider properly the new and material evidence submitted by Dr. Gruberman. (Document No. 15 at 8-9.) Contrary to the Appeals Council's finding that the evidence did not relate to the time period in question, Claimant contends that the evidence substantiates his allegations of disabling impairments and that his condition met Listing 1.05B. (Id. at 9.)

In response, the Commissioner asserts that the evidence submitted to the Appeals Council does not warrant remand. (Document No. 16 at 8-10.) The Commissioner asserts that despite Dr. Gruberman's report that Claimant had difficulty wearing his prosthesis due to severe tenderness and hypersensitivity over the stump, the evidence before the ALJ reflected that Claimant had not attempted to use the prosthetic over the last year and used crutches instead. (Id. at 8.) The

9

Commissioner further asserts that Dr. Gruberman's report does not provide evidence that Claimant suffered stump complications at the time of the ALJ's decision. (Id. at 9.) The Commissioner cites the following evidence in support of her argument that Dr. Gruberman's opinions did not relate to the relevant time period:

> As of September 21, 2011, Plaintiff was satisfied with his prosthetic and going to request therapy and a cane (Tr. 988). The next day, September 22, 2011, Plaintiff reported increased pain due to the prosthetic leg (Tr. 1008). At the latest, on August 31, 2012, Plaintiff reported that his stump was painful to touch and sensitive (Tr. 1018) but no confirmation of this complaint was made on examination (Tr. 1018-22). Then, on February 13, 2013, Plaintiff told Dr. Gruberman that he could not wear the prosthetic leg and admitted that he had not worn it for a year (Pl.'s Ex. A at 2).

(Id.) Accordingly, the Commissioner contends that the evidence is insufficient to demonstrate that Claimant had a problem with his body that prevented the effective use of a prosthesis for at least twelve months, as required by Listing 1.05B. (Id.) Dr. Gruberman's report and opinion therefore, does not warrant remand because it would not have changed the ALJ's decision.

On May 18, 2015, Claimant submitted a Supplement Brief in support of his Motion for Judgment on the Pleadings. (Document No. 18.) Claimant asserts that he filed subsequent claims for DIB and SSI, for which he was awarded benefits on December 28, 2012, and May 6, 2015, respectively. (Id. at ¶ 1.) Claimant contends that the favorable decisions constitute new, material, and additional evidence that allows for a reversal and/or remand in this matter. (Id. at ¶ 2.) Claimant asserts that the underlying evidence justifying the subsequent awards of benefits was new and material evidence that related to the period under consideration. (Id. at 2.) Specifically, the new substantive evidence relied upon in the award of subsequent benefits consisted of Dr. Gruberman's report and opinion, that was rejected by the Appeals Council. (Id.) Claimant notes that he was awarded DIB benefits as of December 28, 2012, which was only one day after the ALJ's denial in the instant matter. (Id. at ¶ 1.) Accordingly, Claimant contends that the subsequent awards of

benefits constitutes new evidence such that reversal or remand is required. (Id. at 2-3.)

Analysis.

Additional Evidence.

Taking Claimant's arguments out of turn, the Court first considers Claimant's allegation that the decisions of his subsequent awards of DIB and SSI constitute new and material evidence that requires reversal or remand. (Document No. 18.) In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[3]

---

[3] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to

In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. Id.

It is often true in cases of this nature, where benefits are awarded on a second application, that at least some of the evidence may be the same evidence considered by the ALJ. See Bradley v. Barnhart, 463 F.Supp.2d 577 (S.D. W.Va. 2006)(Copenhaver, D.J.); Reichard v. Barnhart, 285 F.Supp.2d 728 (S.D. W. Va. 2003) (VanDervort, M.J.). This Court has remanded several cases with somewhat similar factual scenarios. See, e.g. Reichard, 285 F.Supp.2d 728. The evidence may likely be a continuation of Claimant's medical evidence with regard to the same medical conditions. In Baker v. Commissioner of Soc. Sec., 520 Fed.App'x, 228, 229 (4th Cir. 2013), however, the Fourth Circuit rejected Baker's claim that she was entitled to a sentence six remand based on a subsequent award of benefits. Baker, 520 Fed. App'x at 229. Rather, the Fourth Circuit held that "[a] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." (Quoting Allen v. Commissioner, 561 F.3d

---

incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders*' construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

646, 653 (6th Cir. 2009)). The Fourth Circuit found that Baker failed to meet her burden of showing that the evidence relied upon in reaching the favorable decision pertained to the period under consideration in the appeal. Id. Thus, Claimant must demonstrate that the report and opinions of Dr. Guberman, which formed the basis of the favorable subsequent decisions, are relevant to the period under consideration in the instant appeal.

Respecting Dr. Guberman's records, the Court notes that the physician's evaluation and assessment were conducted on February 4, 2013, after the ALJ's December 27, 2012, decision. The evaluation was a one-time examination. As the Commissioner points out, the evidence from Dr. Gruberman was rejected by the Appeals Council because it concerned a time subsequent to the ALJ's decision. (Tr. at 2.) Claimant asserts, however, that Dr. Gruberman's report and assessment served as the additional evidence that resulted in his subsequent awards of benefits. The Court finds, however, that there is no evidence that the condition of Claimant's stump deteriorated between December 27, 2012, and February 4, 2013. The Court finds that although Dr. Gruberman's report and assessment were conducted a little more than one month after the ALJ's decision, the evidence relates back to the condition of Claimant's stump when the ALJ rendered his decision. The Commissioner relies upon the evidence to establish that Claimant initially reported no problems with his prosthetic but the very next day indicated that he experienced pain when he wore it. Nearly a year later, Claimant reported that his stump was painful and sensitive to touch. For the very reasons that the Commissioner argues that Dr. Gruberman's report and opinion does not relate to the relevant time period, the Court finds that it does. It is reasonable to conclude that based on Claimant's reports of pain and sensitivity on August 12, 2012, that he had not worn the prosthetic due to such issues, since September 22, 2011. Accordingly, the Court finds that Dr. Gruberman's report and assessment are new, in that they were created subsequent to the ALJ's decision. The Court further finds that the

13

evidence is material in that it reasonably could have changed the ALJ's decision as to disability, especially in light of Listing 1.05B. Claimant had the additional evidence prepared in response to the ALJ's unfavorable decision regarding his prosthetic. Good cause exists, therefore, for Claimant's failure to provide the evidence to the ALJ, in that it did not exist at the time of the ALJ's decision. Finally, Claimant has provided the Appeals Council and the Court with the report of Dr. Gruberman's evaluation and his assessment. Consequently, Claimant has made a general showing of the evidence. The Court therefore finds that remand is required for further consideration of Claimant's right leg status post amputation impairment and his resulting limitations, especially from the prosthetic. The Court has found that this matter must be remanded, and therefore, does not address the remainder of Claimant's allegations.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 16.) is **DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court..

. The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2015.

R. Clarke VanDervort
United States Magistrate Judge